UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL STORM,

    Petitioner,

v.

                                        Case No. 14-cv-1037-pp

UNITED STATES PAROLE COMMISSION,

    Respondent.

**DECISION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING AS MOOT
PETITIONER'S DISCOVERY MOTIONS**

Petitioner Daniel Storm, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. §2241. The petition challenges the United States Parole Commission's decision to modify the terms of his special parole by including a sixty-day period of home confinement. For the reasons explained below, the court denies the petition. The court also denies as moot the petitioner's January 5, 2015 motion for discovery (Dkt. No. 26); his February 19, 2015 renewed motion for discovery and motion for extension of time (Dkt. No. 27); and his May 14, 2015 motion for grant of habeas relief or motion to compel production (Dkt. 28).

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the late 1980s, the petitioner was convicted on federal drug trafficking charges in the Northern District of Illinois. He served a term of imprisonment,

and now is serving a life term of special parole. The conditions of the petitioner's parole prohibit him from leaving the Eastern District of Wisconsin without permission from his probation officer, and prohibit him from communicating with Bureau of Prisons inmates. Dkt. No. 17, ¶¶5-6. The United States Parole Commission is responsible for the petitioner's supervision, through the United States Probation Office in the Eastern District of Wisconsin. United States Probation Officer Patty Savasta is the petitioner's supervising probation officer.

Officer Savasta received information establishing that, on May 3, 2014, the petitioner traveled between Milwaukee and Michigan on the Lake Express ferry without permission. Id., ¶4. She also received information that "Storm had had numerous contacts via email with BOP inmates." Id., ¶6. Officer Savasta reported those violations to the Parole Commission, and recommended modifying the petitioner's parole conditions to include a sixty-day period of home confinement with location monitoring. On August 20, 2014, the Parole Commission issued its initial decision, modifying the terms of the parole to include a term of home confinement.

On August 25, 2014, the petitioner filed this federal habeas petition, along with an emergency motion asking the court to enjoin the Parole Commission's imposition of home confinement. Separately, he had appealed the Parole Commission's decision to its National Appeals Board, but the Board

had not yet issued a decision at that time.¹ In an order dated August 29, 2014, the court denied the petitioner's motion for emergency injunctive relief, because he had not exhausted his administrative remedies and the home confinement condition had not been implemented.² Dkt. No. 4. The court also directed the government to respond to the habeas petition. Id. The government responded by moving to dismiss the petition for failure to exhaust administrative remedies. Dkt. No. 7. The petitioner then asked the court to defer ruling on the government's motion until after the Parole Commission had decided his administrative appeal. Dkt. No. 8.

On October 17, 2014, the Board affirmed the Parole Commission's initial decision to impose a home confinement condition. The Board found "that there was sufficient information to corroborate" Officer Savasta's allegation that the petitioner had left the district without permission and had associated with persons with criminal records without permission. Dkt. No. 11-1, at 2. The Board further stated:

> The Commission complied with its procedures for changing conditions of parole. You were provided with notice of the requested special conditions, you were given a chance to object to the conditions before they were imposed, and had the opportunity to appeal the Commission's decision. No more is required by due process.

---

¹ The petitioner also has filed a separate habeas petition challenging the imposition of a lifetime term of special parole, Case No. 14-cv-405. The court will decide that petition separately.

² The petitioner "renewed" his requests for injunctive relief by motions dated September 9, October 23, and October 24, 2014. The court denied those requests for injunctive relief on May 18, 2015. Dkt. No. 29.

3

<u>Id.</u>

On October 27, 2014, Judge Adelman, the judge presiding over the case at that time, denied the government's motion to dismiss and directed it to respond to the petitioner's emergency motion for injunctive relief. Dkt. No. 12. On November 3, 2014, the government filed an answer to the petitioner's habeas petition and a response to the petitioner's motion for injunctive relief, supported by a declaration from Officer Savasta. Dkt. Nos. 16-17. The petitioner replied to the government's answer on November 10, 2014. Dkt. No. 19. He then filed two letters under seal, raising additional issues related to his parole conditions. Dkt. Nos. 21-22. The court permitted the government to file a surreply addressing those issues, which it did on December 29, 2014. Dkt. No. 24. Finally, the petitioner moved for an order compelling the Parole Commission to produce documents related to his parole, and for an extension of time in which to conduct discovery. Dkt. Nos. 26-27. For the reasons explained below, the court denies the petitioner's habeas petition, and denies as moot his motion to compel production of documents and motion for an extension of time.

## II. ANALYSIS

The petitioner's special parole status is a form of custody for purposes of §2241. <u>Maleng v. Cook</u>, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989). Because the petitioner is challenging the Parole Commission's modification of the terms of his parole to include a sixty-day period of home confinement, he is challenging the manner in which his sentence is carried out, not the imposition

4

of his sentence. For that reason, §2241 is the correct statute under which to proceed. Kramer v. Olson, 347 F.3d 214, 217 (7th Cir. 2003) (§2241 is "usually reserved for attacking the execution, not [the] imposition, of a sentence").

Judicial review of Parole Commission action is "extremely narrow and limited to determining whether the Parole Commission acted arbitrarily or capriciously." Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986). Title 18 U.S.C. §4209(d)(1) gives the Parole Commission the authority to modify conditions of parole, either on its own motion or on the motion of a probation officer.[3] The law requires that parole conditions must reasonably relate to the nature and circumstances of the violations and the history and characteristics of the parolee. 18 U.S.C. §4209(a)(1)-(2). Section 4209(b) provides that

> [t]he conditions of parole should be sufficiently specific to serve as a guide to supervision and conduct, and upon release on parole the parolee shall be given a certificate setting forth the conditions of his parole. An effort shall be made to make certain that the parolee understands the conditions of his parole.

The petitioner filed his §2241 petition using the Administrative Office's form petition, but completed very little of the form. In the section entitled "Grounds for Your Challenge in This Petition," instead of explaining the grounds for his challenge and the supporting facts, the petitioner stated, "see attached and incorporated Petition for Writ of Habeas Corpus." Dkt. No. 1 at p. 6. He attached to the petition eighty-four pages of documents—

---

[3] When the Sentencing Guidelines went into effect in 1987, and replaced parole with supervised release, Congress took steps to phase out the concept of parole. It repealed 18 U.S.C. §§4201-4218, but with the proviso that "Chapter to remain in effect for thirty-one years after Nov. 1, 1987." All of those provisions, therefore, remain in effect until November 1, 2018.

5

communications from his supervising officer and the Parole Commission; his appeal to the parole commission; letters he wrote to the Parole Commission; copies of cases; e-mails he sent to his probation officer, and her responses. Nowhere in his federal habeas petition did the petitioner state what provisions of the Constitution or the laws of the United States he believed the Parole Commission had violated. Nowhere did he point to the specific facts that he believes prove that the Parole Commission violated the Constitution or federal statutes.

The petitioner appears to expect that the court will somehow figure out, from reading through the eighty-four pages of attachments, what it is he is alleging, and why. The court is aware that this petition has been pending for nine months, and has had at least one judicial reassignment. As of May 12, 2015, the petitioner filed a demand that the court grant habeas relief immediately, "without further delay or motion." The petitioner would have made it easier for the court to rule more quickly on his petition had he actually told the court, in the petition, what violations he believed had occurred, and why.

Nonetheless, the court has looked at the documents the petitioner attached. After reviewing those, the court has concluded that the petitioner appears to be making Fifth Amendment procedural and substantive due process challenges to the Parole Commission's decision to impose a condition of home confinement. Procedurally, the petitioner complains that the Parole Commission imposed a condition of home confinement without granting him

an in-person hearing regarding the alleged violations. Dkt. No. 1-1 at 6, 72-73, Dkt. No. 9, at 2, Dkt. No. 10, at 9. Substantively, the petitioner appears to argue that the Parole Commission lacked a reasonable basis on which to impose home confinement, and thus that its imposition of that condition violated substantive due process. Dkt. No. 1-1, at 5-7, 73-74. Neither argument has merit.

1. <u>The Petitioner's Procedural Due Process Challenge Fails Because the Parole Commission Complied with the Statutory Requirements by Giving Him Notice of the Alleged Violations and the Proposed Home Confinement Condition, an Opportunity to Object, and a Right to Appeal.</u>

The petitioner's procedural due process challenge fails because the law does not require the Parole Commission to conduct an in-person hearing before modifying parole. Section 4209(d)(1) provides in relevant part:

> The Commission may modify conditions of parole pursuant to this section on its own motion, or on the motion of a United States probation officer supervising a parolee: Provided, that the parolee receives notice of such action and has ten days after receipt of such notice to express his views on the proposed modification. Following such ten-day period, the Commission shall have twenty-one days, exclusive of holidays, to act upon such motion or application.

Similarly, 28 C.F.R. §§ 2.40(b) and (d) give the Commission broad discretion to modify, change or add to conditions of supervised release, at any time. Neither provision makes any mention of a hearing.

Citing <u>Morrissey v. Brewer</u>, 408 U.S. 471, 92 S. Ct. 2593 (1972), <u>Gagnon v. Scarpelli</u>, 411 U.S. 471, 92 S. Ct. 2593 (1972), and <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963 (1974), the petitioner argues that he is entitled to the same procedural due process rights that would apply if the Parole Commission

7

had tried to revoke his parole, or if he were a prisoner subject to disciplinary proceedings. Dkt. No. 10, at 3-4. There are several problems with this argument. First, nothing in the statute supports the petitioner's argument.

Second, Morrissey—one of the cases the petitioner himself cites—recognizes "that due process is flexible and calls for such procedural protections as the particular situation demands . . . not all situations calling for procedural safeguards call for the same kind of procedure." Id., at 481, 92 S. Ct. at 2600. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (internal quotation marks and quoting citation omitted). Due process generally does not require an in-person hearing when written submissions are an adequate method of resolving a dispute. A party has a meaningful opportunity to respond if the party has "the opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken[.]" United States v. Wilson, 159 F.3d 280, 290 (7th Cir. 1998) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1498 (1985)) (emphasis added).

The reason that the law provides for more due process in situations where the Commission seeks to revoke parole is because the consequences of parole revocation are severe. If the Commission revokes parole, the defendant will lose his liberty and be sent back to prison. A situation which could result in someone going to prison requires more due process than a situation in

which a defendant does not face incarceration. Similarly, more due process is required in situations where a person who already has lost his liberty and is in prison faces even more loss of freedom (solitary confinement, loss of privileges, etc.) as a result of disciplinary proceedings.

The court concedes that the petitioner has a liberty interest in his parole status, e.g., Morrissey, 408 U.S. at 481-82, 92 S. Ct. at 2601, and that home confinement will reduce his liberty for sixty days, subject to certain exceptions. But the petitioner will not be sent back to prison as a result of the Parole Commission's decision to modify the terms of his parole. The court determines that the loss of liberty resulting from parole revocation is much more significant than the addition of a sixty-day period of home confinement to a continuing term of parole, and the court rejects the petitioner's attempt to equate home confinement with incarceration for purposes of "the due process safeguards" applicable to the Commission's decision to modify the terms of parole under §4209 in supervisory proceedings.

The Parole Commission has an important interest in changing or modifying the conditions of parole, when necessary. Thus, the court must balance the government's interests with the petitioner's. To require a full-fledged in-person hearing before the Commission could modify a parole condition would impose a significant and unwarranted administrative burden on the Parole Commission. Neither §4209 nor the corresponding regulations require such a hearing. The petitioner has not established that an in-person hearing would have had probative value and improved the Parole Commission's

ability to determine two simple fact questions: whether the petitioner left the district without permission and whether he had contact with BOP inmates.

The court cannot find another case in which a parolee filed a habeas petition to challenge the lack of an in-person hearing before the Parole Commission imposed a period of home confinement under §4209 in supervisory proceedings; the petitioner's argument is, at best, unique. But another district court has concluded that due process does not require the Parole Commission to hold an in-person hearing before adding a new condition of parole under §4209.

In <u>Kimberlin v. Dewalt</u>, 12 F. Supp. 2d 487 (D. Md. 1998), Kimberlin, a parolee, argued that the Commission could not impose a special condition requiring him to pay the civil money judgment owed to his crime victim without first holding a hearing. Id. at 495-96. While on parole, Kimberlin had inherited over $155,000 and generated income from a forthcoming book he authored, but he failed to pay anything to his victim. Id. at 490-91. Publicity surrounding Kimberlin's book came to the Commission's attention. Id. at 491. After an investigation into Kimberlin's finances, the Commission imposed the special condition that he pay the civil judgment. Id. The Maryland court concluded that the Parole Commission had a rational basis to impose the special condition and upheld its decision. Id. at 495. The court rejected Kimberlin's due process challenge, because "nothing in the Commission's regulations requires notice and a hearing before a special parole condition can be imposed. Petitioner's attempt 'to expand the due process safeguards

inherent in revocation proceedings to supervisory proceedings must fail.'" Id. at 496 (quoting United States ex rel. Vitoratos v. Campbell, 410 F. Supp. 1208, 1212 (N.D. Ohio, 1976) (concluding that the due process safeguards applicable in the parole revocation process "are not in effect in regard to the supervisory conditions of parole.").

This court reaches exactly the same conclusion here. Before the Parole Commission imposed a period of home confinement in this case, the petitioner received written notice of the alleged probation violations. Dkt. No. 16-1, at 1, Dkt. No. 17, at ¶8-9. Officer Savasta discussed the proposed modified parole condition with the petitioner in an in-person meeting, and the factual basis for it. Dkt. No. 17, at ¶8. The petitioner exercised his opportunity to contest Officer Savasta's recommendation that the Parole Commission impose home confinement. He had the opportunity to appeal the Parole Commission's initial decision to its National Appeals Board, which he did. The government asserts "that Storm has been afforded all the process that is due in this setting." Dkt. No. 16, at 5. The National Appeals Board reached the same conclusion. Dkt. No. 11-1, at 2. This court agrees.

As the Supreme Court explained in Morrissey, not all proceedings require the same due process safeguards. Accordingly, the court determines that, in this situation, the petitioner was not due the same procedural safeguards that would have applied if the Parole Commission had tried to revoke his parole and send him back to prison. The court concludes that the written notice,

objection, and appeal process the Parole Commission followed satisfied the requirement of procedural due process.

2. <u>The Petitioner's Substantive Due Process Challenge Fails Because the Home Confinement Condition is Reasonably Related to the Petitioner's Established Violations and His History and Characteristics.</u>

The petitioner's substantive due process challenge to the Parole Commission's decision also fails, because the Commission's decision was reasonably related to (a) the violations established in the Parole Commission's written hearing process and (b) the petitioner's history of violations.

Officer Savasta sent a report to the Parole Commission detailing her investigation into Storm's unauthorized travel outside the district and his contact with BOP inmates. Dkt. No. 17, ¶¶4-7. The National Appeals Board concluded "that there was sufficient information to corroborate the USPO's version of both these alleged violations to support the need for the special conditions to help provide adequate supervision." Dkt. No. 16-3, at 1. Section 4209(a) gives the Parole Commission discretion in setting terms of parole. <u>See also,</u> <u>Walrath v. Getty</u>, 71 F.3d 679, 683 (7th Cir. 1995) (citing 18 U.S.C. §4209(a)). The court finds that the Parole Commission had a rational basis for its factual conclusion that the petitioner violated his parole.

The court concludes that sixty days of home detention is a condition reasonably related to the petitioner's parole violations and his history and characteristics. Dkt. No. 17, at ¶¶4-6. The petitioner abused his special parole status by leaving the district without permission and by contacting BOP inmates. Under these circumstances, a sixty-day period of home confinement

12

does not violate the petitioner's substantive due process rights, and the Parole Commission's decision was not arbitrary or capricious. As such, the court concludes that the petitioner is not entitled to relief through a §2241 petition, because the modification of his parole to include a home confinement condition does not "violate the Constitution or laws and treaties of the United States."

### III. CONCLUSION

For the reasons explained above, the court **DENIES** the petitioner's §2241 petition, on the ground that the Parole Commission did not violate his procedural or substantive due process rights by modifying the conditions of his special parole to include a sixty-day period of home confinement with location monitoring. Because the court has denied the §2241 petition, the court **DENIES** as moot his motion for discovery (Dkt. No. 26), his renewed motion for discovery and request for an extension of time (Dkt. No. 27), and his motion for habeas relief or, in the alternative, motion to compel production (Dkt. No. 28).

**ORDERED** at Milwaukee this 18th day of May, 2015.

Hon. Pamela Pepper
**United States District Judge**

13